**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3368-22

PHILLIP EISENSTEIN,

    Plaintiff-Appellant,

v.

ATLANTIC CITY BOARD OF
EDUCATION, JAMES KNOX,
JR., PAUL SPAVENTA, and
ATIBA ROSE,[1]

    Defendants-Respondents.

_____

        Submitted September 24, 2024 – Decided October 22, 2024

        Before Judges Gilson and Augostini.

        On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-1200-17.

        Swift Law Firm, LLC, attorneys for appellant (John Swift, on the brief).

        Law Offices of Riley and Riley, attorneys for respondents (Tracy L. Riley, on the brief)

---

[1] Improperly pled as Ativa.

PER CURIAM

In this employment matter, plaintiff Phillip Eisenstein, a non-tenured teacher, appeals from an April 27, 2023 order dismissing his complaint for wrongful termination under the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, against defendants Atlantic City Board of Education, James Knox, Jr., Paul Spaventa, and Atiba Rose with prejudice on a directed verdict. We reverse and remand for a new trial.

I.

We summarize the material facts from the trial testimony on April 26 and April 27, 2023, viewing them in the light most favorable to plaintiff, the non-moving party.

In 2015, plaintiff began working as a physical education teacher at the New York Avenue School in Atlantic City. He taught students in pre-kindergarten through eighth grade.

Over the course of less than two months at the school, plaintiff submitted over forty student complaint referrals. When an incident with a student occurred, plaintiff was required to complete a referral form to document the incident and to advise the administration. Afterwards, the administration detailed on this form the steps taken to address the issue and returned a copy to

the teacher. In addition to completing multiple referral forms, plaintiff, on a few occasions, sent emails to the administration advising of classes he was having difficulty controlling.

On October 14, 2015, plaintiff, while on lunch duty, observed an altercation between two students on the playground. According to plaintiff, one of the students, K.D., was being bullied by other students. A confrontation ensued between K.D. and one of the other students. Plaintiff stepped in between the students to prevent a fight. Afterwards, K.D. stated, "I'm going to go get my uncle's gun and I'm going to come and shoot you tomorrow."

Plaintiff took K.D. into the school and had a brief conversation with him. Plaintiff told K.D. that based upon his statement he had to go to the principal's office "for the safety [of] everybody involved." Plaintiff then walked K.D. to the principal's office and advised the principal of the situation. The principal responded, "I'll handle it." Plaintiff completed the referral form and gave it to the principal. Plaintiff did not see K.D. again that day.

At the beginning of the next school day, October 15, 2015, plaintiff saw K.D. lined up to enter his health classroom. Plaintiff was concerned given the threat K.D. made the prior day. Plaintiff sent an email to the principal "asking what actions were taken with K.D." because he was "shocked" to see him in

3

school the next day given the severity of his threat. Plaintiff explained his concern: "[i]f I hear somebody is threatening to bring a gun, I think, it would take more than the end of the day to – to determine if that was actually the case or not."

Plaintiff received no response to his email; nor did he receive the return copy of the referral form detailing the administration's response to this incident. Plaintiff explained he only learned months later of the disciplinary action taken in an email from the union president. Plaintiff testified that his union president advised him that K.D. had received a two day in-school suspension. The record does not reveal, however, when the suspension took effect.

On cross-examination, plaintiff acknowledged learning from the vice principal of a meeting the administration had with K.D. Plaintiff believed the administration's response to this threat was inadequate.

On October 27, 2015, another incident occurred involving K.D. and another student, J.H., during plaintiff's gym class. As the students were lining up for lunch, plaintiff saw J.H. confronting K.D. According to plaintiff, J.H. was the aggressor and wanted to fight K.D. Plaintiff stepped in between the students to prevent an altercation. Plaintiff spoke separately with J.H. and told him to return to the class. J.H. then immediately confronted K.D. again.

The situation between J.H. and K.D. escalated. J.H. pushed K.D. and began "throwing punches" at K.D. Plaintiff grabbed J.H. by the arm or sleeve; however, J.H. broke away and again began attacking K.D.

Plaintiff explained that at this point, he pushed the gym door open, screamed out into the hallway for help, and screamed for security approximately three times. No one came. Another nearby health teacher, who testified on plaintiff's behalf, heard the commotion and responded. After hearing plaintiff yelling for help, the health teacher left her classroom and ran down the hall trying to find security or someone from the administration. According to the health teacher, no security personnel were in the building.

Plaintiff explained that when no one responded, he made the split decision, "while J.H. was throwing punches at K.D., to apprehend him under his arms." Plaintiff described taking J.H. "under his arms" and bringing him out into the hallway, at which time, plaintiff explained that his arms went "either around his [waist] or around his arms." The other teacher who had come out to call for help described seeing plaintiff take J.H. in a "bear hug."

Plaintiff proceeded to walk J.H. down the hallway, "guiding him" as he walked. At the end of the hallway, a counselor took over, advising plaintiff, "I got him."

A-3368-22

At the end of the day, plaintiff reported to the principal's office where he was told that he was suspended with pay. Following a Board of Education meeting on February 22, 2016, plaintiff was terminated for "excessive use of force."

Plaintiff filed a complaint against his employer, the Atlantic County Board of Education, and several employees, contending a violation of CEPA, under N.J.S.A. 34:19-3(c)(1), (3).[2] A jury was empaneled on April 26, 2023. Plaintiff presented his case-in-chief on April 26 and April 27, 2023. Plaintiff testified on his own behalf and called two additional witnesses: Caroline McCabe, a health teacher at New York Avenue School and Marcia Genova, the union president of the teacher's union. The deposition testimony of plaintiff's use of force expert, Thomas Jordan, Jr., was read to the jury because the expert passed away prior to trial. Following a Rule 104 hearing[3], the court granted defendant's motion barring the testimony of an additional witness, Sherry Yahn, as not relevant to

---

[2] After summary judgment, only count five, the CEPA count, remained.

[3] N.J.R.E. 104 provides, "[t]he court shall decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible." N.J.R.E. 104(a)(1). The Rule also provides for the hearing to be conducted outside of the presence of a jury. N.J.R.E. 104(a)(2).

A-3368-22

the issues before the jury. The court admitted into evidence various documentary exhibits and a video of the incident from October 27, 2015.

At the conclusion of plaintiff's case, defendants moved for a directed verdict under Rule 4:37-2(b). After oral argument, the court granted the motion dismissing plaintiff's case with prejudice. On August 3, 2023, the court amplified its findings in a submission filed pursuant to Rule 2:5-1(b).[4]

Accepting as true all evidence supporting plaintiff's position and giving plaintiff the benefit of every reasonable inference, the court found that plaintiff failed to provide a "law, rule, regulation or public policy . . . that would have a basis for [the jury] to answer the first question that's going to be on the verdict sheet[;]" namely, "did . . . plaintiff have a reasonable belief that his employer's conduct violated a law, rule, regulation or policy."

The court noted that plaintiff's counsel stated, "it's just public policy that all gun threats should be taken seriously and in that short time line, there's no way the school could have . . . followed that policy in such a short amount of time." The court next queried whether plaintiff had a reasonable belief that the

_____

[4] In its amplification dated August 3, 2023, the court noted that in rendering the directed verdict on April 27, 2023, the court cited Rule 4:40-1, which was in error. The court intended to cite Rule 4:37-2(b).

A-3368-22

conduct violated this public policy. Ultimately, the court found plaintiff's failure to identify a specific policy fatal to his CEPA claim.

Plaintiff filed a motion for reconsideration and annexed a copy of the Atlantic City Board of Education, District Regulations 5600 and 5620: Pupil Discipline/Code of Conduct, and Expulsion Procedures, respectively. The court denied the motion for reconsideration.[5] This appeal followed.

## II.

Plaintiff contends the trial court erred in granting a directed verdict because the court's decision was premised on an incorrect legal basis under N.J.S.A. 34:19-3(c)(3); namely, that plaintiff need not identify the complained-of rule, regulation, or policy, notwithstanding Supreme Court precedent.

We review a motion for a directed verdict de novo by applying the same standard governing trial judges. Smith v. Millville Rescue Squad, 225 N.J. 373, 397 (2016). A motion for a directed verdict made pursuant to Rule 4:40-1 or Rule 4:37-2(b) shall be granted "only if, accepting as true all evidence supporting the party opposing the motion and according that party the benefit of

---

[5] Plaintiff appeals solely from the order of April 27, 2023, granting a directed verdict. He does not challenge the order dated June 12, 2023, denying reconsideration. Therefore, we do not address plaintiff's contentions regarding the court's order denying reconsideration.

all favorable inferences, reasonable minds could not differ." Edwards v. Walsh, 397 N.J. Super. 567, 571 (citing Dolson v. Anastasia, 55 N.J. 2, 5 (1969)); see R. 4:37-2(b). Dismissal is appropriate when plaintiff has failed to provide evidence of an essential element of his or her claim. See Pitts v. Newark Bd. of Educ., 337 N.J. Super. 331, 340 (App. Div. 2001). See generally Holm v. Purdy, 252 N.J. 384, 400 (2022); Millville Rescue Squad, 225 N.J. at 397.

"The Legislature enacted CEPA to 'protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct.'" Dzwonar v. McDevitt, 177 N.J. 451, 461 (2003) (quoting Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 431 (1994)). As a remedial statute, CEPA "promotes a strong public policy of the State" and "should be construed liberally to effectuate its important social goal." Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 555 (2013) (quoting Abbamont, 138 N.J. at 431).

CEPA provides in relevant part:

> An employer shall not take any retaliatory action against an employee because the employee does any of the following:
> . . . .
>
> c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law. . .;
>
> (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.
>
> [N.J.S.A. 34:19-3.]

"A plaintiff who brings a cause of action pursuant to N.J.S.A. 34:19-3(c) must demonstrate that: (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a 'whistle-blowing' activity described in N.J.S.A. 34:19-3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action." Dzwonar, 177 N.J. at 462 (citing Kolb v. Burns, 320 N.J. Super. 467, 476 (App. Div. 1999)).

These requirements "should be construed liberally to effectuate [CEPA's] important social goal." Abbamont, 138 N.J. at 431. At the prima facie stage, the evidentiary burden is "rather modest". Zive v. Stanley Roberts, Inc., 182 N.J. 436, 447 (2005).

With respect to the first element of a CEPA claim, "a plaintiff must set forth facts that would support an objectively reasonable belief that a violation

has occurred." Dzwonar, 177 N.J. at 462 (2003). This requires the court make "a threshold determination that there is a substantial nexus between the complained-of conduct and a law or public policy identified by the court or the plaintiff." Ibid. If this threshold determination is met, the issue proceeds to the jury to determine whether the plaintiff believed a violation occurred and if that belief was objectively reasonable. Id. at 464-65.

A plaintiff need not "allege facts that, if true, actually would violate the [law]." Id. at 463. At the time of the incident, "whistleblower employees" need not become "lawyers on the spot" before acting. Chiofalo v. State, 238 N.J. 527, 544 (2019). Importantly, "CEPA does not require any magic words in communicating an employee's reasonable belief of illegal activity." Beasley v. Passaic Cty., 377 N.J. Super. 585, 605 (App. Div. 2005).

Here, by permitting the student who made the threat of violence immediately back into the school population, plaintiff believed defendants violated a policy as to how such threats were to be handled. Defendants contended that plaintiff failed to identify a specific statute, regulation or public policy defendants violated even if those alleged facts were true. Only at the time of his motion for reconsideration did plaintiff provide the District

11

Regulations 5600 and 5620: Pupil Discipline/Code of Conduct, and Expulsion Procedures, which he asserted defendants violated.

A "'clear mandate of public policy' conveys a legislative preference for a readily discernible course of action that is recognized to be in the public interest." Maw v. Advanced Clinical Communs., Inc., 179 N.J. 439, 444 (2002). This mandate "need not be enacted in a constitution, statute[,] or rule, but must nonetheless provide a definite standard by which the employer's conduct may be gauged . . . " Hitesman v. Bridgeway, Inc., 218 N.J. 8, 33 (2014). "[T]he mandate of public policy must be clearly identified and firmly grounded and cannot be vague, controversial, unsettled [or] otherwise problematic." Id. at 34 (alteration in original) (internal quotation marks omitted).

In New Jersey, there is a clear public policy that schools must take appropriate action to protect students from threats of violence, particularly threats of gun violence. Both our Legislature and courts have long recognized public-school safety and security as important public policy concerns. See, e.g., N.J.S.A. 18A:17-42 ("The legislature finds that the safety and welfare of the public school students of this state while attending sessions of the public schools is a matter of prime concern to the citizens of this state"); State v. Best, 201 N.J. 100, 113 (2010) ("[T]he need for school officials to maintain safety, order, and

discipline is necessary whether school officials are addressing concerns inside the school building or outside on the school parking lot."); Frugis v. Bracigliano, 177 N.J. 250, 268 (2003) ("No greater obligation is placed on school officials than to protect the children in their charge from foreseeable dangers, whether those dangers arise from the careless acts or intentional transgressions of others."); Abbott v. Burke, 153 N.J. 480, 514 (1998) ("Security is a critically important factor in the provision of a thorough and efficient education."); Kibler v. Roxbury Bd. of Educ., 392 N.J. Super. 45, 56 (App. Div. 2007) ("We surely are not indifferent to the safety of the dedicated professionals who work, day in and day out, to educate our children."); Abbamont v. Piscataway Twp. Bd. of Educ., 269 N.J. Super. 11, 24 (App. Div. 1993) ("What is more important to a school environment than safety and a healthy environment?").

Additionally, district boards of education are required to "[m]ake . . . rules . . . for its own government . . . and management of the public schools and public school property of the district" that are consistent with state law and regulations. N.J.S.A. 18A:11-1(c); see G.D.M. v. Bd. of Educ. of The Ramapo Indian Hills Reg'l High Sch. Dist., 427 N.J. Super. 246, 258 (App. Div. 2012) (discussing local board's authority to regulate student conduct in accordance with state regulations).

Regarding discipline, N.J.A.C. 6A:16-7.1(a) requires district boards of education to develop and implement "a code of student conduct that establishes standards, policies, and procedures for positive student development and student behavioral expectations on school grounds." The code of conduct must include "[a] description of behaviors that result in suspension or expulsion, pursuant to N.J.S.A. 18A:37-2" and "[a] description of school responses to violations of behavioral expectations . . . that, at a minimum, are graded according to the severity of the offenses[.]" N.J.A.C. 6A:16-7.1(c)(2); N.J.A.C. 6A:16-7.1(c)(5). The discipline policy must also contain "a continuum of actions designed to remediate [violations] and, where necessary or required by law, to impose sanctions[.]" N.J.A.C. 6A:16-7.1(c)(5)(i).

Concerning school safety, superintendents are required to designate a "school administrator, or a school employee with expertise in school safety and security, as a school safety specialist for the [school] district." N.J.S.A. 18A:17-43.3. The school safety specialist is responsible for "supervision and oversight for all school safety and security personnel, policies, and procedures . . . ." Ibid. Additionally, school districts are required to establish a "threat assessment team" at each school. . . "to provide school teachers, administrators, and other staff with assistance in identifying students of concern, assessing those students'

risk for engaging in violence or other harmful activities, and delivering intervention strategies to manage the risk of harm for students who pose a potential safety risk, to prevent targeted violence in the school, and ensure a safe and secure school environment that enhances the learning experience for all members of the school community." N.J.S.A. 18A:17-43.4.

While plaintiff identified a clear public policy (school safety) he believed had been violated, he did not identify a specific rule or regulation expressing the policy he believed defendants had violated. In the absence of a rule, law or regulation identified by a plaintiff, our jurisprudence maintains that "the trial court must identify a statute, regulation, rule, or public policy that closely relates to the complained-of conduct." Dzwonar, 177 N.J. at 463. More recently, in Chiofalo, the Court explained, by having either the court or the plaintiff identify the first prong, "we expanded on how a plaintiff who pursues CEPA claims under N.J.S.A. 34:19-3(c)(1) and (3) can satisfy [this] first prong of a prima facie case." Chiofalo, 238 N.J. at 541.

We are satisfied that plaintiff identified a clear mandate of public policy (public school safety) that he reasonably believed had been violated. In viewing the evidence in a light most favorable to him, plaintiff provided sufficient facts, together with reasonable inferences to be drawn from those facts, that would

15

support an objectively reasonable belief that a violation of this policy had occurred upon seeing the student in the school population after having made the threat to shoot another student. In light of this clear mandate of public policy, either plaintiff or the court would need to identify the law, rule, policy or regulation containing the relevant mandate of public policy concerning school safety at issue. Therefore, we conclude the trial court erred in finding that, as a matter of law, plaintiff had not identified public policy "concerning the public health, safety or welfare or protection of the [school] environment" and dismissing plaintiff's complaint. N.J.S.A. 34:19-3(c)(3).

In conclusion, we reverse and vacate the trial court's order granting a directed verdict and dismissing plaintiff's complaint. We remand the matter for a new trial in light of the legal principals discussed. On remand, plaintiff or the court shall "find and enunciate the specific terms of a statute or regulation, or the clear expression of [the] public policy [identified by plaintiff], which would be violated if the facts as alleged are true." Dzwonar, 177 N.J. at 463 (quoting Fineman v. N.J. Dept. of Hum. Servs., 272 N.J. Super. 606, 620 (App. Div. 1994), certif. denied, 138 N.J. 267 (1984)). We express no view on whether plaintiff will be able to convince a jury of the alleged violation of the public policy or his alleged whistle-blowing activity. Provided plaintiff satisfies a

prima facie showing of the elements of a CEPA claim, defendants, in their case, will have the opportunity to challenge plaintiff's alleged whistle-blowing activity and their response to the threat, as well as offer evidence as to any legitimate, non-retaliatory reason for plaintiff's termination.

Reversed, vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3368-22